UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
DNB ~~NORTHERN~~ DIVISION
Western

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

APR 24 2023

ARTHUR JOHNSTON
BY_____ DEPUTY

DAPHNIE NEWMAN BOUDY,           )
                               )
*Plaintiff,*                   )
                               )    Case No. 5:23cv30-KS'-BWR
**v.**                         )
                               )
**MCCOMB SCHOOL DISTRICT,**    )
**MCCOMB SCHOOL DISTRICT**     )
**BOARD OF TRUSTEES, and**     )
**JAMES HARVEY,** former Interim )
Principal now Assistant        )    **Bench Decision Requested**
Principal and in his official capacity )
                               )
*Defendants.*                  )

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

Plaintiff, Daphnie Newman Boudy ("Plaintiff" or "Ms. Boudy"), as and for her

Complaint in this action against Defendants, McComb School District ("District"),

McComb School District Board of Trustees, and James Harvey ("Mr. Harvey")

(collectively, "Defendants'), hereby avers as follows:

### Nature of the Claim

1.      This is an employment-related action for violation of the Plaintiff's civil rights and

other rights by her former employer, as she seeks injunctive and equitable relief, as well

as monetary damages and punitive damages, to redress Defendants' unlawful

employment practices against Plaintiff, including its discriminatory treatment and

harassment due to her sex (female) and disability. Its unlawful retaliation against her

when she ended her quid pro quo sexual relationship with Mr. James Harvey, former

Interim Principal, now Assistant Principal at Denman Junior High School, that created a hostile work environment. The Plaintiff was unlawfully denied her request for Reasonable Accommodations after Reasonable Accommodations were already provided since the beginning of her employment, discriminated against, and retaliated against in terms of conditions of employment, harassment, and other related claims in violations of Title IX of the Education Amendment of 1972 of the Civil Rights Act, Title VII of the Civil Rights Act of 1964, as codified, U.S.C. 42 §§ 2000e to 2000e-17, Title I and Title V of the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117, Sections 501 and 505 of the Rehabilitation Act of 1973, the Civil Rights Act of 1991, the Mississippi Department of Education Educator Code of Ethics and other rights by the Mississippi State Board of Education.

## The Parties to This Complaint

2.      The pro se Plaintiff, Daphnie Newman Boudy, a disabled adult female, has a mailing address of 111 Oak Street, McComb, Mississippi 39648. Her phone number is 985.285.8712. Her email address is daphnieboudy@outlook.com. At all relevant times before her unlawful job elimination, unlawful job reassignment, and forced resignation at issue in this matter, Plaintiff was an Academic Interventionist for the McComb School District housed at Denman Junior High School located at 1211 Louisiana Avenue, McComb, Mississippi 39648.

3.      The Defendants, McComb School District, McComb School District Board of Trustees, and Mr. James Harvey, former Interim Principal, now Assistant Principal, and

in his official capacity, have a mailing/workplace address of 695 Minnesota Avenue, McComb, Mississippi 39648. Their phone number is 601.684.4661. At all relevant times, the District has met the definition of an "employer" under all applicable statutes.

## Basis for Jurisdiction and Venue

4.    This Court has jurisdiction over this action pursuant to Title IX of the Education Amendment of 1972 of the Civil Rights Act, Title VII of the Civil Rights Act of 1964, as codified, U.S.C. 42 §§ 2000e to 2000e-17, Title I and Title V of the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117, Sections 501 and 505 of the Rehabilitation Act of 1973, the Civil Rights Act of 1991, the Mississippi Department of Education Educator Code of Ethics and other rights by the Mississippi State Board of Education.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) because a substantial part of the events or omission giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## Introduction

6.    From October 2021 to January 2023, Plaintiff was employed with the McComb School District as an Academic Interventionist, where she has her Mississippi Educator's License with endorsements in eight (8) different subject areas, attached as *Exhibit 1*. Plaintiff prayed for the perfect position with the District accommodating her disability needs, where she intended to work for 25 years until her retirement. Accepting a position with the District and working at Denman Junior High School was therapeutic and healing

for Plaintiff as she discontinued psychiatric treatment and medication management by

engaging in protected employment activities and requested Reasonable Accommodations,

which were granted. After Plaintiff's Reasonable Accommodations were removed, forced

resignation, unlawful employment practices, discriminatory treatment, and harassment

against her, Plaintiff relapsed, having a mental health crisis in January 2023. She began

outpatient treatment, is continuously adjusting to changes in medication management, is

experiencing deteriorating health, and was recently diagnosed with new illnesses as this

matter has caused embarrassment, humiliation, degradation, loss of self-esteem and self-

confidence, increased anxiety and panic attacks, emotional distress, loss of enjoyment of

employment, loss of enjoyment of life, loss of income, and loss of community and sense

of belonging for Plaintiff, among other related challenges and factors.

## Exhaustion of Federal Administration Remedies

7.     Plaintiff exhausted her administrative remedies with the Equal Employment

Opportunity Commission ("EEOC") by opening her Complaint on December 2, 2022.

After several delays and rescheduling by EEOC, Plaintiff finally filed her Complaint on

March 28, 2023, requesting immediate closure of her case.  On April 6, 2023, EEOC

issued Plaintiff a Notice of Right to Sue as a true and correct copy of that notification is

attached as *Exhibit 2*.  This Complaint is being filed within 90 days of Plaintiff's receipt

of the EEOC Notice of Right to Sue.

## Statement of Facts

8.    In October 2022, Plaintiff was initially recommended and hired by Ms. Betty

Wilson-McSwain, Federal Programs Director, as a part-time Math Academic

Interventionist for the District housed at Denman Junior High School, attached as *Exhibit*

*3*. Plaintiff explained to Ms. Wilson-McSwain her need for part-time employment based

on her Social Security Disability Income and disabilities of depression, anxiety, and other

health impairments. Plaintiff was new to the McComb School District, and she never

signed any hiring employment paperwork with the District in reference to her part-time

Academic Interventionist position as she trusted Ms. Wilson-McSwain, her expertise, and

mentorship for guidance. From Plaintiff's previous employment experience with her

disability and shameful mental illness diagnosis, she provided Ms. Wilson with her

healthcare provider's note documenting her disability and written accommodations,

attached as *Exhibit 4a and 4b*, Ms. Wilson-McSwain reassured Plaintiff:

     a.  Her Reasonable Accommodations would be met and adhered to.

     b.  Her healthcare provider's note documenting her disability and written

     accommodations would be given to Central Office and confidentially placed

     in her employee file.

     c.  She would only pull six (6) to eight (8) scholars working with small groups of

     scholars as an Academic Interventionist and provided with an assistant, if needed.

     d.  Her monthly income will be in "compliance with her additional source of

     [Social Security Disability Income/Spousal Support] income," as Ms. Wilson-

McSwain outlined in an email addressed to District Administrators dated October 24, 2022, attached as *Exhibit 5*.

9.      In April 2022, Mr. James Harvey, Interim Principal at Denman Junior High School, offered Plaintiff a full-time English Language Arts (ELA) Academic Interventionist position under Ms. Betty Wilson-McSwain and Federal Programs for the 2022-2023 school year. Plaintiff interviewed and accepted the position with Mr. Harvey as she asked him if he was aware of her disabilities and current Reasonable Accommodations and asked if he needed documentation. Mr. Harvey stated he did not need anything from Plaintiff further stating Central Office has everything they need. Mr. Harvey stated he would forward Central Office his recommendation and reassured Plaintiff that every aspect of her job would remain the same except she would be going from part-time to full-time, and instead of teaching math, she would teach ELA. Plaintiff's prayers were finally answered by finding the perfect full-time position with the District.  She was finally able to suspend her Social Security Disability Income, attached as *Exhibit 6*, by earning over the monthly substantial gain amount with an annual salary of $54,950 with ten (10) additional paid days for Academic Interventionists, attached as *Exhibit 7*.

10.     At the end of April 2022, Mr. Harvey informed Plaintiff of Summer 2022 job opportunities at Denman. Plaintiff contacted Ms. Wilson-McSwain, who hired Plaintiff as the Co-Summer School Site Base Coordinator and teacher at Denman and a Summer School STEM teacher at the Boys and Girls Club of Southwest Mississippi, where

Plaintiff previously completed a successful Summer 2021 STEM Structural Engineering
Program. Mr. Marcus Pittman, Director of the Boys and Girls Club of Southwest
Mississippi, advocated, recommended, and confirmed Plaintiff's successful STEM
program to Ms. Wilson-McSwain due to Plaintiff's knowledge, expertise,
professionalism, and dedication to students, the Club, and the McComb, MS community.

11.    In early May 2022, there was a shortage of teachers signing up for Summer 2022
at Denman.  Meanwhile, Plaintiff was housed at Denman and familiar with the faculty,
she began recruiting teachers. Initially, Plaintiff was told that if teachers were "certified,"
they could teach Summer classes. Plaintiff recruited one teacher in particular, Coach
Shane Hamberlin, to teach social studies. It was later revealed that teachers must be
"certified" in the subject area they will teach for Summer 2022, attached as *Exhibit 8*.  In
an in-person meeting with Ms. D. Waller, Co-Summer School Site Base Coordinator at
Denman and Academic Coach for the District, Ms. Grefredia Nash, incoming Principal at
Denman via Zoom, Ms. Ruby Husband, former Denman Principal and work under
Federal Programs, and Mr. James Harvey, Plaintiff was asked to allow Coach Shane
Hamberlin to teach social studies for Summer 2022 under her Mississippi Educator's
License and Plaintiff be a "teacher of record" and would sign off on final grades. Plaintiff
reluctantly agreed to be "teacher of record" for Coach Hamberlin to teach social studies
as she wanted Summer 2022 at Denman to be adequately staffed and successful.

12.    On or about May 30, 2022, and preparing for Summer 2022, Plaintiff recruited
teachers, created schedules, planned field trips (*Exhibit 9*), etc. Plaintiff began having

reservations and feeling uneasy about being a "teacher of record" for Coach Hamberlin. Plaintiff learned Ms. D. Waller, Co-Summer School Site Base Coordinator, is/was certified in social studies. Plaintiff asked Ms. D. Waller if she could assist Coach Hamberlin with social studies as she refused to jeopardize her educator's license.

13.     On or about May 30, 2022, Plaintiff was immediately removed or fired as the Co-Summer School Site Base Coordinator and Summer School teacher at Denman and Summer School STEM teacher at the Boys and Girls Club of Southwest Mississippi by Ms. Wilson-McSwain as she occasionally embarrassed Plaintiff in front of others and made false statements against her. In a text forwarded to Plaintiff from Mr. Harvey dated May 26, 2022, it states:

> "I'm sitting here next to Ms. Wells. I asked her 'where is Ms. Boudy at today? She not working?' she said idk she was upset yesterday with Ms. Wilson. I said yea I saw Wilson come up there [at Denman] acting a fool. Lol", attached as *Exhibit 9*."

14.     On or about June 1, 2022, Mr. Harvey, Ms. D. Waller, and numerous faculty and staff voiced their concerns about Plaintiff's removal as many stated Plaintiff was "done dirty" "did dirty" by Ms. Wilson-McSwain. Mr. Harvey forwarded several emails to Dr. Cedric Ellis, Superintendent, and Ms. Wilson-McSwain, voicing his concerns and opposition to Plaintiff's removal from Denman's 2022 Summer School Program, attached as *Exhibit 10.* In a text forwarded to Plaintiff from Mr. Harvey dated June 1, 2022, it states:

> "Doc Ellis [Dr. Cedric Ellis] jumped her [Ms. Wilson-McSwain] after I got thru talking to him cause she [Ms. Wilson-McSwain] called me before I called her", attached as *Exhibit 11*.

In another text forwarded to Plaintiff from Mr. Harvey to Dr. Cedric Ellis, dated June 2, 2022, it states:

> "Hey Doc I addressed those concerns in writing and included u in sending. I along with Waller tried to appeal for peace and calm with her [Ms. Wilson-McSwain] today but no dice", attached as ***Exhibit 12***.

15.    On or about June 7, 2022, Plaintiff met with Ms. Louise Sanders, Assistant Superintendent, and Ms. Ruby Husband in the Central Office boardroom about Plaintiff's removal from Summer School 2022 at Denman. Plaintiff stated to Ms. Sanders that Ms. Ruby Husband and other District Administrators asked her to illegally use her educator's license as the "teacher of record" for Coach Hamberlin, who was/was not certified in social studies, so he could teach social studies during Summer school.  Plaintiff further reiterated to Ms. Sanders and Ms. Husband that she was immediately removed or fired as the Co-Summer School Site Base Coordinator and Summer School teacher at Denman and Summer School STEM teacher at the Boys and Girls Club of Southwest Mississippi by Ms. Wilson McSwain because Plaintiff refused to use her educator's license illegally.

On June 9, 2022, Plaintiff forwarded a lengthy, apologetic, and disappointing text message to Mr. Pittman, Director of the B&G Club, which states:

> "Good morning Mr. Pittman, after considerable thought, a disappointing schedule change by Ms. Wilson, and after a meeting at Central Office on Tuesday (June 7), I'll have to reluctantly withdraw my Summer 2022 STEM program from the Boys & Girls Club. My deepest apologies to you, your staff, and participants at your club. As an employee of the McComb School District and if something goes wrong or a participant is injured, my Mississippi Educator's License will be in jeopardy, which I cannot afford. Again, my apologies as I did not foresee any mishaps and to prevent any future mishaps or discrepancies occurring with my Summer 2022 STEM program. -Daphnie", attached as ***Exhibit 13***.

**Beginning of Quid Pro Quo Sexual Relationship
Between Plaintiff and Mr. James Harvey**

16.     In June 2022, Mr. Harvey approached Plaintiff about a sexual relationship in exchange for ADA accommodations and job security. He was displeased with the outcome of Plaintiff's removal or firing from Denman's 2022 Summer School Program. Due to Plaintiff's health, limited and fixed income, desperation, and continued prayers for the perfect full-time position accommodating her disability needs, she reluctantly agreed to a "consensual" sexual relationship with Mr. Harvey as he constantly stated he would protect Plaintiff and her job because he is a part of the "administrative and decision-making team" for the District.

17.     The Defendants failed to adhere to their District's Policy Code: EBBABA-Prohibition of Sexual Abuse, Molestation, and Misconduct pg. 17, which states:

> "Employees and students in the McComb School District are protected from sexual discrimination, including sexual harassment, by Title IX of the Education Amendment of 1972 to the Civil Rights Act. It is the intent of the Board to maintain an environment free from sexual harassment of any kind. Therefore, unwelcomed sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature amounting to or constituting harassment are prohibited."

18.     As Plaintiff's superior, District Administrator, one of her immediate supervisors, and one who had significant influence over Plaintiff's employment, Mr. Harvey took advantage of Ms. Boudy's desperation, disability, and vulnerability as he manipulated her into a quid pro quo sexual relationship. Mr. Harvey requested sex from Plaintiff in exchange for providing Reasonable Accommodations and job protection that Plaintiff

was entitled to as a matter of law, which Title VII, Title IX, and the Mississippi

Department of Education Educator Code of Ethics prohibit.

19.    Due to the power imbalance between Mr. Harvey - Plaintiff's supervisor, and

Plaintiff - subordinate, the "consensual" sexual relationship is viewed as coercion and

exploitation because Mr. Harvey offered Ms. Boudy job protection and ensured her ADA

accommodations in exchange for her agreed sexual acts.

20.    The Defendants failed to adhere to the Mississippi Department of Education

Educator Code of Ethics, which states:

   a.  Standard 1 - Professional Conduct: An educator should demonstrate conduct

   that follows generally recognized professional standards.  1.2 - Unethical conduct

   includes a.) harassment of colleagues and b.) inappropriate language on school

   grounds.

   b.  Standard 5 – Educator/Collegial Relationships: An educator should always

   maintain a professional relationship with colleagues, both in and outside the

   classroom. 5 – Unethical conduct includes d.) discriminating against or coercing a

   colleague on the basis of race, religion, national origin, age, sex, disability or

   family status and e.) using coercive means or promise of special treatment in order

   to influence professional decisions of colleagues.

21.    After the Summer 2022 mishap, before the start of the 2022-2023 school year, and

during the 2022-2023 school year, Mr. Harvey, now Assistant Principal, Ms. Wilson-

McSwain, and Ms. Nash, new and first-year Principal at Denman, repeatedly asked

Plaintiff if she could be the "teacher of record" for Ms. Ebonee Felder, former/current math teacher at Denman who failed to obtain a new temporary educator's license for the 2022-2023 school year and who was reemployed by the District under Ms. Wilson-McSwain as the Family Engagement Coordinator - an unlicensed support personnel. They explained Plaintiff could work as the ELA/Math Academic Interventionist while Ms. Felder teaches math classes under Plaintiff's license and Plaintiff would be listed as "teacher of record." Plaintiff refused.

22.    On August 3, 2022, Plaintiff was given two (2) large class sizes of 27 – 30 scholars for two (2) blocks with a math (**Exhibit 14**) and ELA (**Exhibit 15**) class to teach and requested Plaintiff perform intervention services for 70+ scholars. In an email forwarded to Plaintiff from Ms. Nash dated August 3, 2022 (cc'd to Ms. Wilson-McSwain and Mr. Harvey), it states:

> "You will have two blocks ELA all year. We are working on schedules at the moment. It is unavoidable. Thanks for being a team player", attached as **Exhibit 16**.

> Plaintiff responded:

> "I'm sorry Ms. Nash. That's not possible. I was reluctant to accept the 1 ELA block when I was told it was optional then was told it was mandatory. If you have other alternatives, please let me know. -Daphnie", attached as **Exhibit 16**.

Due to Plaintiff's previous and current Reasonable Accommodations and health, Plaintiff expressed "that's not possible" because she knew she could not handle the workload but was reasonable and fair and accepted one (1) ELA block in addition to her Academic Interventionist duties of serving 70+ scholars.

Due to the District's delays in restoring and reconsidering Plaintiff's current and already granted Reasonable Accommodations, which violated Title I and Title V of the Americans with Disabilities Act of 1990 and Sections 501 and 505 of the Rehabilitation Act of 1973, Plaintiff submitted a Letter of Resignation dated August 10, 2022. Plaintiff's Letter of Resignation states:

> "Since the signing of my contract and due to the number of inconsistencies, dual/triple roles, duties and responsibilities as the ELA and Math Interventionist, ELA teacher and Math teacher, I am submitting my Letter of Resignation...as I was unaware of all these extra and last minute added on duties and responsibilities prior to the signing of my 2022-2023 contract - Daphnie", attached as ***Exhibit 17***.

Dr. Cedric Ellis, Ms. Sanders, Ms. Wilson-McSwain, Mr. Harvey, and Ms. Nash all rejected Plaintiff's resignation. The District, all mentioned above, and Plaintiff agreed to one (1) ELA class with ten to fifteen scholars and an assistant, along with her regular ELA Academic Interventionist duties serving 70+ scholars, pulling six to eight scholars and working with small groups of scholars, attached as ***Exhibit 18***.

Plaintiff wanted no association with the math department because she was constantly asked to illegally use her educator's license as "teacher of record" to help Ms. Felder, former math teacher now/was listed as the Family Engagement Coordinator under Ms. Wilson-McSwain.

### Plaintiff Attempted to End Quid Pro Quo Sexual Relationship with Mr. James Harvey Quietly, Respectfully and Carefully

23.    In August 2022, Mr. James Brown, Title IX Coordinator/HR, conducted a professional development training on Policy Code EBBABA – Prohibition of Sexual

Abuse, Molestation, and Misconduct. Plaintiff learned that the District prohibits workplace sexual relationships. Plaintiff tried to end her sexual relationship with Mr. Harvey, fearing losing her job and educator's license. Mr. Harvey rejected the notion of ending their sexual relationship by constantly stating:

> "I run Denman. I'm not stunting these people. They hired a pedophile, C. Ladner, knowing he was paying these young black boys to suck their d!ck, had male students living with him, plus they found the Security Director's son in his house drinking alcohol. They better not f@ck with my job."

24.    From August 2022 – November 2022, Plaintiff did enjoy Mr. Harvey as a colleague, friend, and fellow New Orleanian but expressed concern about her job and ending their sexual relationship. Mr. Harvey constantly stated, "I run Denman, Nash don't know sh!t. I ain't stunting these people." Plaintiff felt trapped in a sexual relationship with Mr. Harvey as he continued to remind her that he recommended her for her full-time job and was protecting her. Plaintiff was already trying to end her sexual relationship with Mr. Harvey in fear of losing her job and educator's license, but then she finally realized she was being used, manipulated, coerced, and "benefiting" Mr. Harvey more than he benefited her. Mr. Harvey tricked Plaintiff into having a "consensual" sexual relationship in exchange for benefits she was already entitled to and receiving: 1.) Reasonable Accommodations, and 2.) a job she was already performing and qualified for prior to his recommendation (*Exhibits 1* and *3*). In a phone call and text message to Mr. Harvey dated October 8, 2022, Plaintiff stated:

> "Coach, I've come to realize that I'm benefiting u more than u benefit me. The few things u've done for me I truly appreciate & I hope u feel the same abt the few things I've done for u. I truly wish u the best & we're done. I learned a lot

from u. We had a great time & we'll always be colleagues. Please do not contact me again. If its school/work related, please inform me at school. Peace & Blessings", attached as ***Exhibit 19***.

25.     During the Thanksgiving (November 2022) holiday break, Plaintiff ended her

sexual relationship with Mr. Harvey.  Typical of Mr. Harvey's same manipulating tactics,

he accused Plaintiff of having "an agenda" when all she wanted to do was quietly,

respectfully, and carefully end their sexual relationship without anyone knowing. In a text

message to Mr. Harvey dated November 21, 2022, Plaintiff stated:

> "GM, I'm my number 1 priority & I guarantee myself. I've provided myself with my own comfortable hm and what ever else I need. I thank you for everything and I pray you feel the same. I'm done. I'm good. Again, I appreciate you and we'll forever be colleagues and fellow New Orleanians. There's no malice, evil, hatred & definitely NEVER "AN AGENDA". Be blessed & take care Coach", attached as ***Exhibit 20***.

> Plaintiff did not answer any of Mr. Harvey's phone calls or text messages, so Mr.

Harvey came to her house and had flowers and gifts delivered numerous times. In a text

message to Mr. Harvey dated November 22, 2022, Plaintiff stated:

> "Good morning Coach, Mr. Harvey, Coach Harvey, please DO NOT text me, DO NOT call me and DO NOT come to my home. You are NO LONGER welcomed. Your calls are NO LONGER welcomed. Your text messages are NO LONGER welcomed. Please DO NOT deliver anything to my home or have anything delivered to my home. I'm about PEACE, TRANQUILITY. I wish the same for you and your family. Take care Coach -Daphnie," attached as ***Exhibit 21***.

### November 28 – December 2, 2022

26.     Upon returning to work after the Thanksgiving holiday break, Plaintiff reiterated

that she and Mr. Harvey could be colleagues and their sexual relationship was "done"

even though she prayed her job protection and disability accommodation would not end.

On several occasions, Mr. Harvey would call Plaintiff into his office for an excuse, such as to get a walkie-talkie to help him in the hallways during dismissal or assist with Teacher Support Team (TST) integrity checks. While in his office, Mr. Harvey would brush up against Plaintiff, grabbing her face and forcing her to kiss him. Plaintiff stated, "No, let me out" while pushing him away as people passed his office seeing what he was doing. Plaintiff expressed that she would get in trouble and lose her job, as Mr. Harvey repeatedly stated, "you in a precarious and dangerous situation" and "jokingly" said, "If I let you out, imma have to kill you." Again, Mr. Harvey reiterated, "I run Denman. I ain't stunting these people."

27.     Plaintiff would walk down the hallways with and without scholars. On several occasions, Mr. Harvey stated to Plaintiff and other colleagues (in front of Plaintiff), "Look at that fine piece of a$$."

28.     Mr. Harvey requested Plaintiff go with him to the field house to see the locker room, to put his laundry in the washer, and to give Plaintiff two (2) sweatshirts.  Plaintiff reluctantly went, and while there, Mr. Harvey continued to brush up against Plaintiff, grabbing her face and forcing her to kiss him as she refused and stated, "No."  The District has cameras in every hallway and every building, so Plaintiff stated, "I know they have cameras in here, they can see us, and I know I'm gonna get in trouble and lose my job." Fearing cameras, whispers around campus that Mr. Harvey was making inappropriate sexual comments and sexually harassing Plaintiff, losing her job protection and Reasonable Accommodations, and possibly losing her job.

On November 30, 2022, at the end of the school day, Plaintiff reluctantly completed a Sexual Harassment Report Form and fearfully placed it in Ms. Nash's mailbox in front of her office door, sealed in an envelope, attached as *Exhibit 22*.

On or about October 13, 2022, Plaintiff completed an incident report and written statement against a female student for making inappropriate comments about Plaintiff's body in front of the class and faculty and grabbing Plaintiff's breast with both hands in the hallway at the start of class, attached as *Exhibit 23*. Mr. James Brown is the Title IX Coordinator/HR, but no one from HR consulted or checked in on Plaintiff about her concerns or feelings. Plaintiff did not want the student to go to jail. However, at a manifestation hearing, Plaintiff recommended the student get counseling as the student was removed from Denman and placed at the alternative school.

29.    On December 1, 2022, Plaintiff was called into a meeting by Ms. Wilson-McSwain, Mr. Robert Lampkin, Curriculum Director, and Ms. Nash assuming they were substituting for Mr. James Brown, Title IX Coordinator/HR, and going to discuss her Sexual Harassment Report Form from the previous day. They explained that Plaintiff's position as an Academic Interventionist was being eliminated and reassigned (*Exhibit 24*), along with Ms. Ebonee Felder's "Academic Interventionist" position at Denman.

When Plaintiff arrived to work early morning on December 1, 2022, a Duties of TST Members memo was on Plaintiff's desk, and it clearly shows Plaintiff and Ms. Felder are listed as "Academic Interventionists", attached as *Exhibit 25*. Ms. Felder was rehired by the District as the Family Engagement Coordinator because she could not

obtain another temporary educator license and was reemployed by the District under Ms. Wilson-McSwain as an unlicensed support personnel. In November 2022, Ms. Felder finally obtained her temporary educator's license (*Exhibit 26*) and regained her position at Denman as a "math teacher" or was still listed as the Family Engagement Coordinator and assisting in the math classes. To the contrary, Ms. Felder suddenly overnight became a "made-up" "fictitious" "Academic Interventionist" and "cover employee" to justify Defendant's unlawful actions against Plaintiff. In the December 1, 2022, meeting, they further explained to Plaintiff:

  a. She was being reassigned to a regular math classroom with larger class sizes after the Christmas and New Year holidays beginning January 2023.

  b. She would no longer work with smaller groups of scholars.

  c. She would no longer have an assistant.

30.    Plaintiff asked for alternatives to the changes as she was willing to be fair and reasonable, but she knew this was the Defendant's way of forcing her to resign because:

  a. She ended her quid pro quo sexual relationship with Mr. Harvey.

  b.  The previous day, she completed a Sexual Harassment Report Form and fearfully placed it in Ms. Nash's mailbox.

  c. Mr. Harvey's visible sexual harassment and inappropriate comments towards Plaintiff in front of colleagues.

  d. Her continued refusal to illegally use her educator's license as "teacher of record" so Ms. Felder could teach under Plaintiff's license.

e. She would struggle and have difficulties without Reasonable

Accommodations, which would negatively affect her job performance; and

f. She would continue to be subjected to a hostile work environment.

31.    Plaintiff was forced to resign (*Exhibit 27*) because she feared:

a. Continued and worsening unlawful employment practices against her, including

discriminatory treatment and harassment due to her sex (female) and disability.

b. Continued and worsening unlawful retaliation against her when she ended her

quid pro quo sexual relationship with Mr. Harvey.

c. Working with larger groups of students.

d. The removal of her ADA accommodations would negatively affect her job

performance.

e. Not having an assistant.

f. Not working with smaller groups of students as she did from October 2021 –

December 2022.

g. Having a nervous breakdown and mental health emergency in front of her

students or at school.

h. Continued and worsening hostile work environment.

i. Embarrassment and humiliation; and

j. Ruined professional and personal reputation.

32.    On December 2, 2022, Plaintiff opened her employment discrimination Complaint

against the District with EEOC as Plaintiff informed Mr. Harvey of her filing. From

August 2022 – November 2022, Plaintiff tried to quietly, respectfully, and carefully end their "consensual" sexual relationship, but Mr. Harvey kept rejecting the notion and constantly saying, "I run Denman. I'm not stunting those people." Once Mr. Harvey was notified of a pending EEOC Complaint, he changed his tune, requested and tried to convince Plaintiff not to file her Complaint because:

    a. He would lose his reputation with the District.

    b. Once he retired from the District, he wanted to return as a part-time consultant or bus driver to continue his medical benefits.

    c. His educator's license would be suspended; and

    d. He would be out of a job and have no income.

**Continued Coercion, Exploitation, Manipulation, and Harassment by Mr. Harvey**

33.    Mr. Harvey apologized for his behavior and inappropriate comments as he promised to make things right with Plaintiff. He continues contacting Plaintiff with ulterior motives, threats, hidden agendas, and manipulating tactics as he would speak of "business opportunities", real estate investments, vacations, and "signing" opportunities (***Exhibit 28***), while trying to convince Plaintiff not to file her Complaint with EEOC. He stated he was familiar with EEOC laws, stating they were in a "consensual" sexual relationship, and no attorney would pick up Plaintiff's case because "you know what it was, and you knew what you were doing." After Plaintiff's forced resignation, Mr. Harvey continued to manipulate Plaintiff with his position as an Administrator in the

District by stating he would help her get her job back or another job within the District, but that promise never materialized as of the filing date of this Complaint.

Plaintiff has not received any income since January 2023, as her Social Security Disability Income monthly payments have not yet resumed. Plaintiff attempted to work at the Community College. After two days of working, she had a severe mental health crisis on campus and immediately resigned. Plaintiff believed Mr. Harvey would help her get her job back or another job within the District because she has zero monthly income.

34.     On April 4, 2023, Mr. Harvey called Plaintiff informing her that he was summoned to a Central Office meeting with Mr. James Brown and Ms. Louise Sanders about Plaintiff's EEOC Complaint, which states:

> "...Assistant Principal James Harvey and I were in a consensual sexual relationship as he reassured me my disability accommodations would continue and he would protect me and my job because he was a part of the administrative and decision-making team. During the Thanksgiving [November 2022] break, I ended our sexual relationship. When I returned back to work, I told him we could be colleagues. He would call me to his office brushing up against me while trying to kiss me saying that I was in a precarious situation while people were passing by, and I kept telling him no! Assistant Principal Harvey made sexual comments about me in front of my coworkers saying, "Look at that fine piece of a--." On December 1, 2022, I was called into the office by Director of Federal Programs Betty Wilson, Denman Jr. High School Principal Grefredia Nash, and Curriculum Director Robert Lampkin, and they explained to me that they were eliminating my position and wanted me to become a classroom teacher with larger groups of students. They were also taking my accommodations of having an assistant in the classroom with me..." attached as *Exhibit 29.*

Mr. Harvey stated, in the above meeting with Mr. Brown and Ms. Sanders, he admitted to Plaintiff's EEOC Complaint and wrote a statement to Ms. Sanders on April 6,

2023. In fact, in a text message from Mr. Harvey to Plaintiff on April 22, 2023, he states:

> "…'Just tell the truth Coach'. Remember those words?...I confirmed everything that happened on that EEOC complaint…they got the truth from me about our relationship and I will never deny that…" attached as **Exhibit 30.**

35.     Mr. Harvey confused Plaintiff's EEOC Complaint as "greed" and as if she called him a "f@cking molester" or "rapist" when Plaintiff only seeks justice and just compensation for unlawful discriminatory actions against her by Defendants, which he admitted to.  Mr. Harvey also confused Plaintiff saying, "Just tell the truth Coach" as if she wanted him to state "outrageous bogus lies".  In a text message from Mr. Harvey (his confirmed cellphone number 601.467.1334) dated April 22, 2023, he states:

> "'Just tell the truth coach' Remember those words? That's exactly what I did! The TRUTH by itself is enough! So now you want me to go along with bogus, outrageous lies that make me look like a f@cking molester or rapist or some sh!t. I told you weeks ago to not let greed get in you concerning this sh!t, and this sounds like exactly that. I told u that u were talking too dam much to these attorneys! The nastier and slimier it is the more they can potentially win so they make more. I confirmed EVERYTHING THAT HAPPENED on that EEOC complaint. If you or those lawyers think I'm gonna say I threatened you with losing ur job if u didn't have sex with me, y'all both are crazy as hell! I can't believe you would even SUGGEST some bullsh!t like that to me. That means u don't give a f@ck about me, just as long as u get maximum dollars! I wasn't raised that way nor am I that kind of man. I would NEVER respect you again if I went along with some sh!t like that for a dollar! They got the truth from me about our relationship and I will never deny that, but no way I'm going along with what u suggested! Not for YOU OR ANYBODY ELSE!!" attached as **Exhibit 30.**

### Plaintiff's Prior Protected Activities

36.     In October 2021, Plaintiff initially requested to work with smaller groups of six to eight students or smaller class sizes of ten to fifteen students with an assistant if needed for her Reasonable Accommodations (**Exhibit 4b**). Plaintiff disclosed her disabilities,

medical conditions, and provided written documentation (*Exhibit 4a*), which was approved by Ms. Wilson-McSwain as she submitted her recommendation for hire as a part-time Math Academic Interventionist with the District.

37.    In April 2022, Plaintiff again disclosed her disability and reiterated her current Reasonable Accommodations to Mr. Harvey, which was again approved as he interviewed her and submitted his recommendation for hire as Denman's full-time ELA Academic Interventionist.  Plaintiff asked if she needed to provide him with written documentation, but Mr. Harvey stated the District had everything it needed. According to the Equal Employment Opportunity Commission (EEOC):

> "When an individual decides to request an accommodation, the individual or their representative must let the employer know that they need an adjustment or change at work for a reason related to a medical condition. There is no need to mention the ADA or use the phrase "reasonable accommodation."

> "Requests for reasonable accommodation do not have to be in writing and can be requested in a face-to-face conversation or using any other method of communication."

38.    From October 2021 to December 2022, Plaintiff in fact engaged in prior protected activities, which allowed her to be successful and constantly praised for her outstanding job performance. *Exhibit 31* shows Plaintiff's 2021-2022 school year schedule, where she was granted Reasonable Accommodations.  *Exhibit 18* shows Plaintiff's 2022-2023 school year schedule, where she continued her granted Reasonable Accommodations and protected activities.  *Exhibits 14 -17* show Plaintiff's opposed two full class loads of 27 – 30 students, which was adjusted to one small class size of ten to fifteen scholars with an

assistant, as Plaintiff initially requested with Ms. Wilson-McSwain and again reiterated with Mr. Harvey during the hiring and recommendation process.

**Plaintiff Could Have Transferred to Another School/Position within McComb School District and Was Denied Reasonable Accommodations**

39.    Plaintiff was a District-wide employee hired under Federal Programs and Ms. Wilson-McSwain. She was never disciplined or written up, and her job performance was outstanding, considering the District wanted to reassign Plaintiff to a math classroom working with larger class sizes and more students. However, these unlawful actions by the District denied Plaintiff of her Reasonable Accommodations and violated her civil rights, even though the District had already approved them.

40.    In fact, Plaintiff is a Highly Qualified educator with eight different endorsements on her Mississippi Educator's License ranging from k-12 education in Administration, math, social studies, science, ELA, and Special Education, attached as *Exhibit 1*. To the contrary, the District has numerous vacancies and a shortage of Highly Qualified educators. At least half of its educators teach under temporary and emergency licenses and/or in subject areas they are not qualified to teach.

41.    With Plaintiff's numerous endorsements and years of experience (*Exhibit 7*), she could have transferred to another school/position within the District to accommodate her disabilities and medical needs. Or the District could have continued with the Reasonable Accommodations they initially agreed to when Plaintiff was originally hired in October 2021 and addressed the Sexual Harassment Report Form and misconduct of Mr. Harvey.

42.    Ms. Natasha Watson was an employee who previously worked at Denman as the ELA Academic Interventionist during the 2020-2021 school year. According to Mr. Harvey, she left in bad standing for job abandonment, and Defendants attempted to suspend her educator's license.  At the start of the 2022-2023 school year, Ms. Watson was rehired by the District to be Denman's school secretary and later hired as the Math Academic Intervention in November 2022, attached as ***Exhibit 32***. Ms. Watson complained of vision problems, bright lights, and headaches. Ms. Watson also complained of difficulties and her inability to keep up with her work schedule and duties as an Interventionist at Denman. In November 2022, Ms. Watson transferred to Summit Elementary School, accommodating her medical needs.  Since Defendants eliminated Plaintiff's position and they could no longer provide Reasonable Accommodations at Denman, then she should have been transferred to another school just like Ms. Watson. Also, Ms. Watson's transfer confirms and validates Plaintiff's claims that she was the only Academic Interventionist at Denman in November 2022 until Ms. Felder's "fictitious" "made-up" "cover employee" role on or about December 1, 2022.

43.    Meanwhile, on the District website for a Board of Trustees meeting dated January 17, 2023 – Personnel Report, attached as ***Exhibit 33***.  Effective January 4, 2023, Ms. Ebonee Felder was recommended for a math position at Denman, previously held by Ms. Carolyn Williams. Ms. Ebonee Felder could not obtain her temporary emergency educator's license until November 2022 (***Exhibit 26***), which further validates Plaintiff's claims. Plaintiff was the only Academic Interventionist at Denman after Ms. Watson

(*Exhibit 32*) transferred to Summit Elementary School, and Ms. Ebonee Felder was used as a "cover employee" and "fictitiously" labeled as an "Academic Interventionist" at Denman to unlawfully and intentionally discriminate, retaliate against and harass Plaintiff. The Defendants concocted an unlawful plan to further violate Plaintiff's civil rights and other related rights she is entitled.

44.     On the District's website for the same Board of Trustees meeting dated January 17, 2023 – Personnel Report (*Exhibit 33*), effective January 4, 2023, shows Ms. Jerri Manely was hired and recommended for a TST Interventionist position at Higgins Middle School. At the beginning of the 2022-2023 school year until after the Thanksgiving break (November 2022), Plaintiff completed 95% of all TST duties at Denman, including having an ELA block class in addition to her Academic Interventionist duties. Defendants could have transferred Plaintiff to Higgins Middle School and allowed her to fill that TST Interventionist position vacated by Ms. Janet Vernon, which was available on January 4, 2023.  Or as an alternative and instead of eliminating and reassigning Plaintiff's position, Ms. Jerri Manely has a middle school math endorsement (901), in which she could have been recommended and assigned/reassigned to Denman, attached as *Exhibit 34*.

## Count I - Title VII-Discrimination and Retaliation on the Basis of Sex

45.     Ms. Boudy hereby repeats and realleges the foregoing paragraphs as if fully set forth herein.

46.     Ms. Boudy is a member of a protected class on the basis of sex (female).

47.     Ms. Boudy, in all aspects, was performing her job in a manner that was consistent with the McComb School District's expectations.

48.     Defendants discriminated against Ms. Boudy as described above, including but not limited to harassment, subjected her to a hostile work environment, unlawfully eliminated her position, unlawfully reassigned her position, and removed her approved Reasonable Accommodations that caused her forced resignation.

49.     Defendants' unlawful retaliatory conduct as described above constitutes a willful and wanton disregard for Ms. Boudy's rights under Title VII, were outrageous and malicious, were intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights entitling Plaintiff to an award of punitive damages.

50.     As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer emotional distress and severe mental anguish including but not limited to humiliation, degradation, depression, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

51.     As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, and other consequential relief.

## Count II - Title IX of the Education Amendment of 1972 of the Civil Rights Act
## Based on Discrimination and Retaliation

52.    Ms. Boudy hereby repeats and realleges the foregoing paragraphs as if fully set forth herein.

53.    Ms. Boudy is a member of a protected class on the basis of sex (female).

54.    Ms. Boudy, in all aspects, was performing her job in a manner that was consistent with the McComb School District's expectations.

55.    Defendants discriminated against Ms. Boudy as described above, including but not limited to harassment, subjected her to a hostile work environment, unlawfully eliminated her position, unlawfully reassigned her position, and removed her approved Reasonable Accommodations that caused her forced resignation.

56.    Defendants' unlawful retaliatory conduct as described above constitutes a willful and wanton disregard for Ms. Boudy's rights under Title IX, were outrageous and malicious, were intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights entitling Plaintiff to an award of punitive damages.

57.    As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer emotional distress and severe mental anguish including but not limited to humiliation, degradation, depression, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

58.    As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues

to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, other consequential relief.

### Count III - Title I and Title V of the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117 Based on Discrimination and Retaliation

59.     Ms. Boudy hereby repeats and realleges the foregoing paragraphs as if fully set forth herein.

60.     Ms. Boudy is a member of a protected class on the basis of her disability.

61.     Ms. Boudy, in all aspects, was performing her job in a manner that was consistent with the McComb School District's expectations.

62.     Defendants discriminated against Ms. Boudy as described above, including but not limited to harassment, subjected her to a hostile work environment, unlawfully eliminated her position, unlawfully reassigned her position, and removed her approved Reasonable Accommodations that caused her forced resignation.

63.     Defendants' unlawful retaliatory conduct as described above constitutes a willful and wanton disregard for Ms. Boudy's rights under Title I and Title V, were outrageous and malicious, were intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights entitling Plaintiff to an award of punitive damages.

64.     As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer emotional distress and severe mental anguish including but not limited to

humiliation, degradation, depression, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

65.    As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, other consequential relief.

### Count IV - Sections 501 and 505 of the Rehabilitation Act of 1973 Based on Discrimination and Retaliation

66.    Ms. Boudy hereby repeats and realleges the foregoing paragraphs as if fully set forth herein.

67.    Ms. Boudy is a member of a protected class on the basis of her disability.

68.    Ms. Boudy, in all aspects, was performing her job in a manner that was consistent with the McComb School District's expectations.

69.    Defendants discriminated against Ms. Boudy as described above, including but not limited to harassment, subjected her to a hostile work environment, unlawfully eliminated her position, unlawfully reassigned her position, and removed her approved Reasonable Accommodations that caused her forced resignation.

70.    Defendants' unlawful retaliatory conduct as described above constitutes a willful and wanton disregard for Ms. Boudy's rights under Sections 501 and 505, were outrageous and malicious, were intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights entitling Plaintiff to an award of punitive damages.

71.    As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer emotional distress and severe mental anguish including but not limited to humiliation, degradation, depression, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

72.    As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, other consequential relief.

### Count V - Mississippi Department of Education Educator Code of Ethics and other rights by the Mississippi State Board of Education Based on Discrimination and Retaliation

73.    Ms. Boudy hereby repeats and realleges the foregoing paragraphs as if fully set forth herein.

74.    Ms. Boudy is a member of a protected class on the basis of sex (female) and disability.

75.    Ms. Boudy, in all aspects, was performing her job in a manner that was consistent with the McComb School District's expectations.

76.    Defendants discriminated against Ms. Boudy as described above, including but not limited to harassment, subjected her to a hostile work environment, unlawfully eliminated

her position, unlawfully reassigned her position, and removed her approved Reasonable Accommodations that caused her forced resignation.

77.    Defendants' unlawful retaliatory conduct as described above constitutes a willful and wanton disregard for Ms. Boudy's rights under the Educator Code of Ethics, were outrageous and malicious, were intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights entitling Plaintiff to an award of punitive damages.

78.    As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer emotional distress and severe mental anguish including but not limited to humiliation, degradation, depression, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

79.    As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, other consequential relief.

## Count VI – Civil Rights Act of 1991
## Based on Intentional Discrimination and Retaliation

80.    Ms. Boudy hereby repeats and realleges the foregoing paragraphs as if fully set forth herein.

81.    Ms. Boudy is a member of a protected class on the basis of sex (female) and disability.

82.    Ms. Boudy, in all aspects, was performing her job in a manner that was consistent with the McComb School District's expectations.

83.    Defendants discriminated against Ms. Boudy as described above, including but not limited to harassment, subjected her to a hostile work environment, unlawfully eliminated her position, unlawfully reassigned her position, and removed her approved Reasonable Accommodations that caused her forced resignation.

84.    Defendants' unlawful retaliatory conduct as described above constitutes a willful and wanton disregard for Ms. Boudy's rights under the Civil Rights Act of 1991, were outrageous and malicious, were intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights entitling Plaintiff to an award of punitive damages.

85.    As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer emotional distress and severe mental anguish including but not limited to humiliation, degradation, depression, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

86.    As a direct and proximate result of said unlawful employment practices and in disregard for Ms. Boudy's rights and sensibilities, Ms. Boudy has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, other consequential relief.

**Prayer for Relief**

**WHEREFORE**, Plaintiff prays that the Court enters judgment in her favor and against Defendants, containing the following relief:

a.      An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

b.      An order directing Defendants to place Plaintiff in the position she occupied but for the Defendants' discriminatory, retaliatory, and/or otherwise unlawful treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

c.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to the loss of past and future income, wages, compensation, job security and other benefits of employment;

d.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages including but not limited to compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and personal dignity, and emotional pain and suffering, and any other physical or mental injuries;

e.       An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm of her professional and personal reputation and loss of career fulfillment.

f.       An award of damages for any and all monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

g.       An award for punitive damages in such amount the Court deems proper;

h.       An award of costs that Plaintiff incurred in this action as permitted by law; and

i.       Such other and further relief as the Court may deem just and proper.

### No Jury Demand

The Plaintiff herein requests a Bench Decision on all issues in this action.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants.

Respectfully submitted:

_____
Daphnie Newman Boudy
111 Oak Street
McComb, Mississippi 39648
Ph: 985.285.8712
daphnienewman@outlook.com